**ATTACHMENT C**

3:18mj285CJK

**AFFIDAVIT**

Your affiant, Adam K. Zeithammel, being duly sworn, deposes and states the following:

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the Pensacola Field Office, and have served in that capacity since May 2015. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy and, as a result of this training and experience as an ATF Special Agent, am familiar with federal criminal laws pertaining to firearms and controlled substances.

2. I have participated in investigations of individuals who have violated state and federal laws, particularly those found in Titles 18 and 21 of the United States Code. I have participated in the execution of search warrants wherein firearms, ammunition, large amounts of narcotics, currency, tools, paraphernalia, and records of firearms and narcotics trafficking have been recovered. I have conducted and participated in the arrests of firearms and narcotics law violators. I have had conversations with other experienced agents regarding firearms and narcotics trafficking activities and the many different enforcement methods used to combat firearms and narcotics trafficking.

3. This affidavit is made in support of an application for a search warrant for two cellular telephones seized from Jerome LEE (aka Jermore LEE) on or about December 11, 2018, following his arrest by ATF Special Agents in Crestview, Florida. These devices are described as:

    (a)     **Motorola phone, model XT1765, IMEI: 354135091104873; and**

    (b)     **LG phone, model LM-X210MA, IMEI: 356233096508038.**

These items are more fully described in Attachment A. This affidavit is made in support of seeking authorization to search the above-described cellular telephones for those items identified in

1

Attachment B, which constitute evidence of criminal activity. This warrant is sought in connection with an ATF investigation into the offenses of possession of a firearm by a convicted felon in violation of Title 18, United States Code, Section 922(g)(1); possession with the intent to distribute a controlled substance in violation of Title 21, United States Code, Section 841(a)(1); and possession of a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c)(1)(A). The following is based on my own investigation or was provided to me by other law enforcement officers. Since this affidavit is for a limited purpose, I have not included every fact known about this investigation, but rather, only those facts necessary to establish probable cause for the requested search warrant.

## INVESTIGATION

4. I am conducting an investigation of Jerome LEE aka Jermore LEE (LEE) and his alleged involvement in the possession of firearms and narcotics during a period beginning on or about October 18, 2017, and ending on or about December 11, 2018 in Okaloosa County, Florida, which is in the Northern District of Florida.

5. Prior to October 2017, LEE was convicted by the State of Florida of multiple felony offenses, including: Possession of a Controlled Substance; Fleeing or Attempting to Elude a Law Enforcement Officer; Failure to Appear; Trafficking in Cocaine; Selling, Manufacturing, Delivering, or Possessing with Intent to Sell, Manufacture, or Deliver, a Controlled Substance; and Driving While License Suspended, Revoked, Canceled, or Disqualified.

6. The Office of Executive Clemency of the State of Florida provided me with a letter with a Gold Seal Certificate dated November 13, 2017. The letter states that, as to those felony convictions, there is no record of LEE's restoration of civil rights, specific authority to possess firearms, or pardon of any kind. Moreover, currently there is no pending clemency application.

7. During October 2017, an ATF confidential informant (CI) had multiple recorded telephone conversations with LEE, who was utilizing phone number (850) 240-3448. In particular, on October 17, 2017, the CI had a recorded telephone conversation with LEE, during which LEE discussed potentially selling the CI a shotgun. On or about October 18, 2017, the CI introduced an ATF undercover agent (UC) to LEE during a controlled undercover operation in Fort Walton Beach, Florida. During this operation, LEE provided a Mossberg Maverick 12 gauge shotgun to the UC in exchange for approximately $250.00 in ATF buy money.

8. On or about November 1, 2017, the UC met with LEE during a controlled undercover operation in Fort Walton Beach to purchase a firearm and a quantity of methamphetamine. During this operation, the UC picked LEE up in an undercover vehicle at an address in Fort Walton Beach, then, at LEE's direction, drove to another address in Fort Walton Beach where LEE exited the vehicle and retrieved a box that contained a loaded Harrington & Richardson .22 caliber revolver. LEE returned to the vehicle with the firearm, then directed the UC to drive to a trailer park in Fort Walton Beach. While parked outside a mobile home, LEE placed an outgoing call on his cellular telephone to an unknown individual to advise that he was going to come inside. LEE entered the mobile home, then returned to the undercover vehicle and provided the previously-mentioned revolver and approximately one-half ounce of methamphetamine to the UC in exchange for approximately $500.00 in ATF buy money ($150.00 for the firearm and $350.00 for the methamphetamine).

9. On or about November 7, 2017, the UC met with LEE during a controlled undercover operation in Okaloosa County to purchase a quantity of methamphetamine. The UC had previously coordinated this transaction with LEE at phone number (850) 240-3448. During the operation, the UC picked LEE up in an undercover vehicle at an address in Fort Walton Beach,

3

and LEE directed the UC to drive to Crestview. Once in Crestview, LEE directed the UC to park in a parking lot where the UC provided LEE approximately $1,300.00 in ATF buy money as payment for two ounces of methamphetamine. LEE provided the UC with approximately 1.5 ounces of methamphetamine, then directed him/her to drive to a nearby address where LEE exited the vehicle and met with several individuals. LEE returned to the vehicle and the UC drove LEE back to Fort Walton Beach. Prior to exiting the vehicle, the UC observed LEE remove a plastic bag from his pocket that contained approximately three to four ounces of methamphetamine; LEE portioned the additional approximate one-half ounce of methamphetamine that was owed and provided it to the UC.

10. On or about November 27, 2018, a federal grand jury in the Northern District of Florida returned an indictment in case number 3:18cr115/MCR, charging LEE with two counts of possession of a firearm by a convicted felon in violation of Title 18, United States Code, Section 922(g)(1), two counts of possession with intent to distribute methamphetamine in violation of Title 21, United States Code, Section 841(a)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c)(1)(A).

11. On or about December 10, 2018, the UC contacted LEE at phone number (850) 240-3448 via text message, that is, via the same telephone number through which LEE had communicated previously with the CI and the UC. The UC informed LEE that he wished to purchase four or six ounces of methamphetamine. LEE responded, "Kool u might have to meet me in CRESTVIEW." LEE texted the UC that he was going to call him from his other phone. LEE then called the UC from phone number (850) 737-7401, and made the following statements including, but not limited to:

4

(a) When the UC inquired about the price per ounce of methamphetamine, LEE stated, "We still at the same man, still at an even four"

(b) The UC offered $350 per ounce, and LEE replied, "We can do 375 bruh. This shit done went up bruh."

(c) LEE stated, "Work with me, I'm still the same guy."

(d) LEE later stated, "Hell yeah, you already know bruh. I'm the same guy bruh. We ain't lose no beat and we ain't lost no sleep…this shit the same shit going on man. That what's going on, same shit."

12. On or about December 11, 2018, at 38 Regent Road, Crestview, Florida, ATF agents from the Pensacola Field Office arrested LEE on the above-mentioned federal indictment. A search incident to arrest of LEE revealed he had, among other things, the following items on his person:

(a) **Motorola phone, model XT1765, IMEI: 354135091104873; and**

(b) **LG phone, model LM-X210MA, IMEI: 356233096508038.**

I noted that, on the previous day, the UC communicated with LEE at two telephone numbers, to arrange a potential narcotics transaction for multiple ounces of methamphetamine, and that LEE possessed two cellular telephones during his arrest.

13. During my career in law enforcement, I have participated in investigations involving narcotics trafficking activities. These investigations have resulted in seizures of controlled substances, sums of cash, and other property. In the investigations I which I have participated, the seized assets represented the proceeds of narcotics trafficking activities. My investigations have provided me with the opportunity to work with and share information with other experienced agents and officers who investigate narcotics trafficking.

5

14. During the course of my law enforcement career, I have written, executed, and assisted in federal and state search warrants seeking narcotics, dangerous drugs, records of illegal narcotics trafficking, and proceeds related to illegal narcotics trafficking.

15. My training and participation in investigations of narcotics traffickers and others involved in illegal businesses and activities have given me the knowledge to recognize methods used by narcotics traffickers and money launderers to conceal their assets, income, and activities from law enforcement and other third parties. Based on my training and experience, I know the following:

(a) Narcotics traffickers often utilize cellular telephones to facilitate communications with co-conspirators and/or store telephone numbers/addresses of associates;

(b) Narcotics traffickers often utilize multiple cellular telephones in an effort to compartmentalize their narcotics trafficking business. Multiple cellular telephones are often utilized in an effort to maintain anonymity and independent contact between sources of supply and a range of customers;

(c) Narcotics traffickers commonly maintain records, receipts, notes, ledgers, and other items relating to the transportation, ordering, sale, and distribution of controlled substances, which are usually maintained where the traffickers have ready access to them and which are often stored on digital media, including a cellular telephone;

(d) Narcotics traffickers commonly maintain addresses or telephone numbers in devices which list names, addresses, and/or telephone numbers of their associates in the trafficking organization; such records are normally maintained within places/things under their control, including a cellular telephone;

(e) Narcotics traffickers commonly take or cause to be taken photographs of themselves, their associates, their property, and the illegal narcotics they distribute, and often maintain these photographs within places/things under their control, including a cellular telephone;

(f) Narcotics traffickers commonly use cellular telephones to communicate with their criminal associates, and those cellular telephones are commonly carried with them or kept at locations under their custody and control, such as at their residences and vehicles, and contain names, numbers, and other information stored in cellular telephones; and

(g) Narcotics traffickers commonly are involved in money laundering and retain records of their transactions within places/things under their control. Records of this kind are also often stored on digital media, including on a cellular telephone.

16. Through training and experience as an ATF Special Agent, I know that individuals who own firearms also use electronic devices, such as cellular telephones and computers, to take photographs of firearms, conduct internet searches related to firearms, and communicate through text messages, e-mail, and social media with others regarding their possession of firearms, and to coordinate the transfer of firearms.

## CONCLUSION

17. Based upon all of the information outlined in this affidavit, I respectfully submit that LEE is involved in the following offenses against the United States: possession of a firearm by a convicted felon in violation of Title 18, United States Code, Section 922(g)(1); possession with intent to distribute methamphetamine in violation of Title 21, United States Code, Section 841(a)(1); and possession of a firearm in furtherance of a drug trafficking crime in violation of

Title 18, United States Code, Section 924(c)(1)(A). I also submit there is probable cause to believe that, within the subject cellular telephones described in Attachment A, there is stored evidence of these crimes, as described in Attachment B.

*[signature]*

Adam K. Zeithammel
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me this 20 day of December, 2018.

*[signature]*

Honorable Charles J. Kahn Jr
United States Magistrate Judge